**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| **ALLISON LEIGH SCHEMPF,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **Action No. 4:17-cv-00057** |
| : | |
| : | |
| **NANCY A. BERRYHILL,** : | |
| **Acting Commissioner,** : | |
| **Social Security Administration,** : | |
| : | |
| **Defendant.** : | |
| : | |

## REPORT AND RECOMMENDATION

Plaintiff Allison Leigh Schempf ("Plaintiff") filed a complaint, pursuant to 42 U.S.C. §§ 405(g) that seeks judicial review of the final decision of Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), which denied Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II. Both parties filed Motions for Summary Judgment, ECF Nos. 9 and 11, with briefs in support, ECF Nos. 10 and 12, which are now ready for recommended resolution.

This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 7. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **GRANTED** to

the extent it seeks reversal and remand of the Commissioner's decision, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") on or about March 22, 2012, alleging that she became disabled beginning November 10, 2011 due to bipolar disorder, anxiety disorder, attention-deficit hyperactivity disorder ("ADHD"), obsessive compulsive disorder ("OCD"), and alcohol dependence.  R. at 23[1]; ECF No. 10 at 1-3.  Plaintiff's application was initially denied on September 3, 2013, and denied again upon reconsideration on March 17, 2014.  R. at 23.  Plaintiff requested a hearing in front of an administrative law judge on May 19, 2014, and such hearing was held on December 2, 2015 before Administrative Law Judge Tom Duann ("the ALJ").  R. at 23, 33.  The ALJ issued his written decision on January 12, 2016, denying Plaintiff's application and finding Plaintiff was not disabled.  R. at 33.  On March 28, 2017, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, making the ALJ's hearing decision the final decision of the Commissioner.  R. at 1-4.  After exhausting her administrative remedies, Plaintiff filed her Complaint for judicial review of the Commissioner's final decision on May 31, 2017.  ECF No. 1.  The Commissioner filed an Answer on July 28, 2017.  ECF No. 5.  Both parties filed Motions for Summary Judgment, ECF Nos. 9 and 11, with briefs in support, ECF Nos. 10 and 12, and Plaintiff filed a

---

[1] "R." refers to the certified administrative record that was filed under seal on July 28, 2017, ECF No. 6, pursuant to Local Civil Rules 5(B) and 7(C)(1).

Reply in support of her Motion, ECF No. 13.   The matter is now ripe for recommended adjudication.

## II. RELEVANT FACTUAL BACKGROUND

In her applications, filed on March 22, 2012, Plaintiff alleges disability due to bipolar disorder, anxiety disorder, attention-deficit hyperactivity disorder ("ADHD"), obsessive compulsive disorder ("OCD"), and alcohol dependence with a disability onset date of November 10, 2011. ECF No. 10 at 3 (citing R. at 26).  At the time of the ALJ's January 12, 2016 decision, Plaintiff was an English-speaking, forty year old woman with a high school education and prior work experience as a retail visual assistant. R. at 31-32.  At the December 2, 2015 hearing before the ALJ, Plaintiff appeared, was represented by an attorney, Brian J. Gillette ("Plaintiff's counsel"), and supplemented her records by testifying and providing additional information via a written statement of work observation by Plaintiff's father. R. at 40-42.   Robert Edwards, an impartial Vocational Expert ("the VE") also testified. R. at 56-60.  The record included the following factual background for the ALJ to review:

Plaintiff resides alone in a house paid for by her parents. R. at 43, 53-54.  She is a high school graduate, completed approximately three years of college, and used to work in retail, and "[f]rom January 6, 2014 through the December 2, 2015 ALJ hearing, Plaintiff worked for her father's law firm as a part-time clerk." ECF No. 12 at 3-5; R. at 44-45, 322.  The record also includes a Work History Report dated March 8, 2013 and completed by Marilyn V. Schempf, Plaintiff's mother ("Plaintiff's mother"), which details Plaintiff's prior work experience, including Sales Associate at a clothing store, Stocker/Cashier at a grocery store, and Visual Manager at a department store. R. at 144-51.  Plaintiff's mother also completed a Function

3

Report dated March 8, 2013 pertaining to Plaintiff, wherein she notes that Plaintiff's bipolar condition and/or her medications cause disruptions in her sleep, making a regular schedule more difficult to maintain.  R. at 152-59.  The Function Report also states that Plaintiff is assisted financially by her parents and has difficulty saving money, and that Plaintiff becomes stressed and overwhelmed easily.  R. at 155-56, 159.  An additional Function Report with substantially similar information was completed by Plaintiff's mother on December 23, 2013.  R. at 172-79, 180-87.

Plaintiff has received psychiatric treatment from Dr. Evelyn Arboleda ("Dr. Arboleda"), and counseling from her therapist, Ms. Beatrice Klusman ("Ms. Klusman").  ECF No. 10 at 3-4; R. at 51-52.  She has been prescribed several medications including Lamictal, Klonopin, Luvox, and Adderall.  ECF No. 10 at 3-4 (citing R. at 214); R. at 51-52.  The record also contains Progress Reports dated from December 8, 2009 to May 21, 2013, completed by Dr. Arboleda.  R. at 222-32.  Dr. Arboleda also completed a Mental Status Evaluation Form, dated March 4, 2014, wherein she notes that Plaintiff needed assistance in coping with work-related stress.  R. at 234-38.  Dr. Arboleda also provided Old Dominion University, the college Plaintiff attended, a letter stating that Plaintiff had been receiving treatment for Bipolar Disorder and ADHD since December 16, 2008 and requested various accommodations for Plaintiff including time extensions and places to take exams that would be less distracting.  R. at 251.  Plaintiff had office visits on June 17, 2014, August 4, 2014, November 3, 2014, February 4, 2015 February 24, 2015, March 9, 2015, March 16, 2015, April 20, 2015, July 29, 2015, September 4, 2015, and October 28, 2015, as evidenced by progress notes completed by Dr. Arboleda for all of the above-referenced dates, with the exception of March 9, 2015, which was noted by Ms. Klusman.

4

R. at 268, 271-80. Particularly significant to the instant dispute is a Mental Medical Source Statement ("the Statement") dated March 16, 2015 and prepared and signed by Dr. Arboleda and Ms. Klusman. R. at 244-49.[2] The Statement[3] noted various symptoms exhibited by Plaintiff including decreased energy, feelings of guilt and worthlessness, anxiety, mood and perceptual disturbances, difficulty concentrating, psychomotor agitation and motor tension, emotional lability, illogical thinking, easy distractibility, autistic thinking, sleep disturbance, oddities of thought or perception, emotional withdrawal, and episodic bipolar periods. ECF No. 10 at 4 (citing R. at 244-49). These findings led Dr. Arboleda and Ms. Klusman to conclude that Plaintiff is unable to sustain regular, punctual attendance or an ordinary routine without special supervision, work with or around others without being distracted, accept instructions from and respond appropriately to supervisors, and deal with normal work-related stress. ECF No. 10 at 4 (citing R. at 244-49). They concluded that Plaintiff would be expected to be absent from work about four days per month, and both providers signed the Statement in support of same. ECF No. 10 at 4 (citing R. at 244-49).

## III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v.*

---

[2] Based on the undersigned's review of the Record, both Dr. Arboleda and Ms. Klusman are providers with "Associates of York." *See* R. at 249 (providing "Associates of York" as the same entity and address for both Dr. Arboleda and Ms. Klusman). *See also* R. at 52 (Q: And you're also seeing Dr. Beatrice Klusman? I mean, not doctor, but Beatrice Klusman? A: Yes. Q: She's a mental health Nurse Practitioner? A: Yes. Q: What kind of treatment is she giving you? A: She occasionally prescribes medications when Dr. Arboleda is on vacation and she's seen me a few times just for prolonged sessions, because Dr. Arboleda typically does medication maintenance. Q: So, Beatrice Klusman has also given you some therapy or counseling? A: Yes."); R. at 63 (State agency psychological consultant considering Plaintiff's medical records from Associates of York); R. at 251 (listing "Dr. Evelyn D. Arboleda, MD General Psychiatry as first listing in Associates of York letterhead).
[3] As discussed in greater detail in Part V, *infra*, the undersigned determined that the Statement was prepared and signed by both providers, which informs a finding of remand. R. at 249 (the last page of the Statement showing visible signatures of both Dr. Arboleda and Ms. Klusman).

*Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).  The ALJ conducts a five-step sequential analysis for

the Commissioner, and it is this process that the Court examines on judicial review to determine

whether the correct legal standards were applied and whether the resulting final decision of the

Commissioner is supported by substantial evidence in the record.  *Mastro*, 270 F.3d at 177.  The

ALJ must determine if

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a
> severe impairment; (3) the impairment meets or equals an impairment included in
> the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404,
> Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past
> relevant work; and (5) the impairment prevents the claimant from having
> substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011)

(citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)

(noting that substantial gainful activity is "work activity performed for pay or profit");

*Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of

proof to make a finding of whether a claimant is able to engage in substantial gainful activity)).

"An affirmative answer to question one, or negative answers to questions two or four, result in a

determination of no disability.   Affirmative answers to questions three or five establish

disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23,

2014) (citing 20 C.F.R. § 404.1520).

Under this five-step sequential analysis, the ALJ made the following findings of fact and

conclusions of law:  First, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity ("SGA") since November 10, 2011, the alleged onset of disability date. R. at 25.

Second, the ALJ found that Plaintiff has the following severe impairments: attention-

6

deficit hyperactivity disorder ("ADHD"), obsessive-compulsive disorder ("OCD"), anxiety disorder, bipolar disorder, and alcohol dependence.  R. at 26.  The ALJ concluded these aforementioned impairments were "severe" because "[they have] more than a minimal effect on [Plaintiff's] ability to perform basic work activities." R. at 26.  In arriving at this conclusion, the ALJ noted that such conditions are supported by "[t]he medical evidence of record [that] reflects objective signs, symptoms, and/or laboratory findings." R. at 26.

At the third step, the ALJ considered the aforementioned "severe" impairments (to wit: ADHD, OCD, anxiety disorder, bipolar disorder, and alcohol dependence) and ultimately found that Plaintiff did not have an impairment or combination of physical and/or mental impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 24-27 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

The ALJ then considered Plaintiff's mental impairments, singly and in combination, under Listings 12.04 and 12.06.  R. at 27.  "[L]istings 12.04 and 12.06 concern mental disorders: listing 12.04 concerns affective disorders; listing 12.06 concerns anxiety-related disorders." *Canady v. Colvin*, No. CA 5:12-2507-KDW, 2014 WL 878880, at *8 (D.S.C. Mar. 5, 2014) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A).

"In determining whether a claimant's impairments satisfy the requirements for a relevant listing, the ALJ must identify the relevant listed impairment or impairments, discuss the relevant evidence, and compare that evidence to the requirements in the applicable listings." *Canady v. Colvin*, No. CA 5:12-2507-KDW, 2014 WL 4063155, at *2 (D.S.C. Aug. 14, 2014) (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)).  As 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A explains, "these listings both 'consist[] of a statement describing the disorder(s)

7

addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations).'" *Canady v. Colvin*, No. CA 5:12-2507-KDW, 2014 WL 878880, at *8 (D.S.C. Mar. 5, 2014). Paragraph B criteria determines severe impairments to be equivalent to psychological disabilities if they include at least two of the following functional limitations: "1. Marked restriction of activities of daily living; or 2. [m]arked difficulties in maintaining social functioning; or 3. [m]arked difficulties in maintain concentration, persistence, or pace; or 4. [r]epeated episodes of decompensation, each of extended duration." *Byrd v. Astrue*, No. 1:09CV00030, 2010 WL 1375224, at *4 (W.D. Va. Apr. 1, 2010). The ALJ found that regarding "paragraph B" of the criteria of the mental disorder listings, "[Plaintiff]'s mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration," so the criteria under "paragraph B" were not satisfied. R. at 27. The ALJ noted that Plaintiff's daily living functions—driving, going to the store, doing chores, cooking, working part time, and interacting with others on social media, etc.—were only mildly restricted. R. at 26-27 (citing R. at 152-59, 172-79, 180-87). As for social function, the ALJ found that Plaintiff has only "moderate difficulties" characterized by difficulty working around other people due to over-stimulation, but the ALJ acknowledged that she attended college classes twice per week and uses texting and the computer to communicate with others. R. at 27 (citing R. at 172-79, 180-87). During mental health sessions, Plaintiff "generally presented as goal-oriented, with logical, coherent, and non-delusional thought processes and an intact memory . . ." R. at 27 (citing R. at 222-23, 233-43, 266-80).

The ALJ noted that with regard to concentration, persistence or pace, Plaintiff has moderate difficulties where she has difficulty concentrating during a two-hour-long movie, but she does communicate with others via texting and over the computer, and she used to attend college classes regularly.  R. at 27 (citing 222-32, 233-43, 266-80).  The ALJ also noted that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration."  R. at 27.  The ALJ referred to the medical record to show a prior psychiatric hospitalization in 2008, "but [no] psychiatric hospitalizations or emergency mental health treatment since the alleged onset date."  R. at 27 (citing R. at 283).

These regulatory listings also contain "additional functional criteria," known as "paragraph C" criteria.  *Canady v. Colvin*, No. CA 5:12-2507-KDW, 2014 WL 878880, at *8 (D.S.C. Mar. 5, 2014) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A).  Paragraph C serves to determine whether symptoms are disabling, with the following conditions required: ". . . if the disorder has lasted at least two years, caused more than a minimal limitation of ability to do basic work activities, [and] with symptoms . . . currently attenuated by medication or psychosocial support." *Byrd v. Astrue*, No. 1:09CV00030, 2010 WL 1375224, at *4 (W.D. Va. Apr. 1, 2010).

In addition to aforementioned requirements, paragraph C also requires one of the following conditions to be met:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

9

*Byrd v. Astrue*, No. 1:09CV00030, 2010 WL 1375224, at *4 (W.D. Va. Apr. 1, 2010). The ALJ

noted that the "paragraph C" criteria were not satisfied because the evidence failed to establish

the presence of such criteria based on the "[Plaintiff]'s mental health progress notes, activities of

daily living, and work activity since the alleged onset date." R. at 27.

Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

perform a full range of work at all exertional levels but with nonexertional limitations that

include: performing simple, repetitive, routine tasks due to limitations in concentration,

persistence, and pace. R. at 28. Plaintiff can also perform work that entails "occasional

interaction with the public, co-workers [sic], and supervisors, and occasional changes to the work

setting" based on the relevant CFR requirements.[4] R. at 28. The ALJ performed a credibility

analysis by reviewing Plaintiff's testimony, health treatment notes, mental assessments provided

by a State agency psychological consultant (at the reconsideration level), and the record as a

whole. R. at 28-31. The ALJ found that although the evidence supported the existence of

medically determinable impairments that would reasonably be expected to result in Plaintiff's

reported symptoms of mood and anxiety disorders, Plaintiff's statements regarding the intensity,

persistence, and limiting effects of the symptoms were not entirely credible. R. at 29. The ALJ

noted that "the record contains fairly minimal medical records, with no evidence of a psychiatric

hospitalization or of any emergency mental health treatment since the alleged onset date." R. at

29. The ALJ also noted that Plaintiff's mental status is generally within the normal limits and

she consistently denied experiencing side effects due to her psychotropic medications. R. at 29

(citing R. at 222-23, 233-43, 266-80). In addition, Plaintiff's mood and anxiety level showed a

---

[4] Such relevant requirements include 20 C.F.R. § 404.1529, SSRs 96-4p, and 96-7p, with consideration given to the
requirements of 20 CFR 404.1527, and SSRs 96-2p, 96-5p, 96-6p and 06-3p. R. at 28.

general trend of improvement with treatment, and she continually reported that her medications were helping, confirmed by both Dr. Arboleda and Ms. Klusman. R. at 29-30 (citing R at 222-23, 233-43, 250-53, 266-80). The ALJ found it notable that Plaintiff lives alone and can take care of herself and her residence without "significant assistance," factors that the ALJ found to be inconsistent with the extent of Plaintiff's alleged limitations. R. at 30.

In assessing the credibility of medical source opinions, the ALJ attributed significant weight to the mental assessments provided by the State agency psychological consultant, who noted that Plaintiff had "moderate limitation in her ability to respond appropriately to changes in the work setting." R. at 30. The ALJ also noted that the assessments provided at the initial level have been superseded by the subsequent medical evidence at the reconsideration level. R. at 30 (citing R. at 62-70, 72-82, SSR 06-3p[5]).

The ALJ gave "partial weight" to the assessments provided by Ms. Klusman, finding that Plaintiff's progress notes did not confirm the severity described in Ms. Klusman's assessments. R. at 30 (citing R. at 244-49, 275; SSR 06-3p). For example, in a progress note completed by Ms. Klusman[6] and dated March 9, 2015, Ms. Klusman noted that Plaintiff was working at her father's firm with no problems, her "mood [was] much more even" and her medication, Lamictal, was effective. R. at 275. The Statement, dated March 16, 2015, indicated that Plaintiff "presented as slightly anxious, with an intact memory, full affect, and intact judgment

---

[5] As other courts within the Fourth Circuit recently acknowledged, "SSR 06-03p was rescinded for claims filed on or after March 27, 2017 . . . . Plaintiff filed [her] claims prior to March 27, 2017; thus, SSR 06-03p still applies to this case." *Estes v. Berryhill*, No. 5:16CV232, 2018 WL 1278200, at *4 (W.D.N.C. Mar. 12, 2018) (citing *Robinson v. Berryhill*, No. 1:16-CV-03628-DCN, 2018 WL 746540, at *3 n.2 (D.S.C. Feb. 7, 2018)) (internal citations omitted).
[6] The progress report was determined to be authored by Ms. Klusman as indicated by her credentials "PMHNP-BC." R. at 275. These credentials are used in connection with her name throughout the record, including the Exhibit List. *See* R. at 36.

and insight." R. at 31 (citing R. at 244-49). The ALJ found this did not indicate "serious mental health symptoms." R. at 31 (citing R. at 244-49).

The ALJ also acknowledged the assessments completed by Dr. Arboleda and gave them "partial weight" because, similar to Ms. Klusman's assessments, Plaintiff's "minimal" progress notes did not confirm the severity of Dr. Arboleda's assessments. R. at 31 (citing R. at 233-43; SSR 96-2p).

Partial weight was assigned to assessments regarding Plaintiff's work performance because the ALJ found that they were not consistent with the "minimal" health treatment notes. R. at 31 (citing R. at 215-16, 287-88, 322-23, 324-26; SSR 06-3p). Partial weight was also given to the assessments completed by the Plaintiff's mother and father, as the ALJ found that the extent of their allegations was not supported by the "minimal mental health treatment notes." R. at 31 (citing 152-59, 172-79, 180-87, 324-26; SSR 06-3p).

The ALJ determined that Plaintiff is unable to perform any past relevant work (as a retail visual assistant) as that position is classified as semi-skilled labor as performed in the national economy at a light exertional level, and therefore the non-exertional demands of the past relevant work exceed those of her RFC. R. at 31. The ALJ also noted that as of the alleged disability date, Plaintiff was thirty-six years old, and considered a "younger individual." R. at 31. Plaintiff also has a high school education and is able to communicate in English. R. at 32 (citing 20 C.F.R. § 404.1564). The ALJ found that transferability of job skills is not relevant to the disability determination because Plaintiff is "not disabled" regardless of whether she has transferable job skills. R. at 32. This standard is in accordance with the Medical-Vocational Rules. R. at 32 (citing SSR 82-41; 20 CFR § Pt. 404, Subpt. P, App. 2).

12

Lastly, the ALJ found that considering her age, education, prior work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [the Plaintiff] can perform." R. at 32 (citing 20 CFR §§ 404. 1569, 404.1569(a)). Because Plaintiff's ability to perform work at all exertional levels has been compromised by nonexertional limitations, the ALJ considered the testimony of the VE, who opined that Plaintiff would be able to perform occupations such as laundry worker, janitor, and sorter. R. at 32. The ALJ determined that the VE's testimony was consistent with information in the Dictionary of Occupational Titles. R. at 32 (citing SSR 00-4p). Therefore, the ALJ determined that Plaintiff was not under a disability, as defined by the Social Security Act, from November 10, 2011, the alleged disability onset date, through January 12, 2016, the date of the ALJ's decision. R. at 32-33 (citing 20 CFR § 404.1520 (g)).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th

13

Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

### A. The ALJ erred by applying the incorrect legal standard, rendering it uncertain as to whether substantial evidence supported his decision.

The relevant inquiry before the Court is whether the ALJ's decision is supported by substantial evidence and whether the ALJ applied the correct legal standard when considering the opinions of Plaintiff's medical providers. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Relying on *Hays*, Plaintiff argues that the correct legal standard was not applied, because the ALJ misidentified the author of the March 16, 2015 Mental Medical Source Statement ("the Statement") as only Plaintiff's therapist, Ms. Klusman, rather than *both* Ms. Klusman and Plaintiff's treating psychiatrist, Dr. Arboleda.[7] ECF No. 12 at 8, 10.[8] *See also* R. at 30-31 (citing R. at 244-49).[9] According to Plaintiff, the result of this error is that the ALJ evaluated the Statement under SSR 06-3p, which is a less deferential standard than it deserved because SSR 06-3p provides that the opinions of therapists, which are considered "non-acceptable medical sources," are to be evaluated under a less deferential standard than if the

---

[7] A Mental Medical Source Statement is a statement prepared by a medical source which "provides opinions regarding a claimant's physical and/or mental limitations." *Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1299-1301 (D. Kan. 2007).
[8] The Commissioner acknowledges that Ms. Klusman discussed the Statement with Plaintiff and filled it out, but also concedes that Dr. Arboleda signed the Statement. *See* ECF No. 12 at 10.
[9] The Statement is contained in the Record as Exhibit 3F. *See* R. at 244-49.

14

Statement was prepared by a doctor with a Medical Degree ("MD").[10]  ECF No. 10 at 5-6; ECF

No. 13 at 1-2.  If an MD prepared the Statement, the correct, and more deferential standard under

which the Statement should be evaluated is 20 CFR § 404.1527.[11]  While the SSR 06-3p standard

has since been rescinded as of March 27, 2017, the parties agree that the case should be analyzed

with consideration given to the regulations that were in place at the time of the ALJ's decision.[12]

*See* ECF No. 10 at 5-6; ECF No. 12 at 16 n.3.

In response, the Commissioner argues that the ALJ did account for the Statement's

authorship by both Ms. Klusman and Dr. Arboleda, contending that the ALJ referred to the

jointly authored statement during the hearing and also referenced the "assessment" in his written

decision.  *See* ECF No. 12 at 11, 14-15 (citing R. at 30-31).  The Commissioner also argues that

the ALJ's decision to assign partial weight to the Statement is supported by substantial evidence

in the record.  ECF No. 12 at 15-20 (citing R. at 31, 233-43; SSR 96-2p).  However, for the

reasons stated herein, the undersigned disagrees with the Commissioner.  Upon consideration of

the arguments presented, the record, and applicable law, the undersigned **FINDS** that the record

is unclear as to whether the ALJ was aware of who authored the Statement, and therefore it is

unknown whether the proper weight was given to the Statement.

---

[10] Social Security Ruling 06-3p considers the medical opinions of licensed physicians to be "acceptable medical sources" and considers the medical opinions of other medical professionals, such as physician assistants, to be "sources other than 'acceptable medical sources.'"  If an ALJ uses one of the sources other than the "acceptable medical sources," he or she needs to "explain the weight given to opinions from these 'other sources.'"  *Jones v. Berryhill*, 681 F. App'x 252, 256 (4th Cir. 2017) (citing SSR 06-3p; 71 Fed. Reg. at 45,594-96).

[11] Under the 20 CFR § 404.1527 standard, the ALJ needs to assess any medical opinion in the record, where "medical opinions constitute statements from physicians . . . as well as other acceptable medical sources . . . [regarding] the nature and severity of the [Plaintiff's] impairment."  The ALJ "will give a treating source's opinion 'controlling weight' where it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the record]."  *Buchanan v. Colvin*, No. 1:14CV209, 2016 WL 485339, at *3 (W.D.N.C. Jan. 19, 2016), *report and recommendation adopted*, No. 1:14-CV-00209-MR-DLH, 2016 WL 502069 (W.D.N.C. Feb. 8, 2016) (citing 20 C.F.R. § 404.1527).

[12] *See supra* note 4.

15

The pertinent regulations determine the weight that shall be afforded to medical opinions when considering a claimant's disability application. For example, "[u]nder the 'treating physician rule,' a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record." *Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011) (citing 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001)). "However, 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.'" *Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011) (quoting *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4)).

Here, the opinion of the treating physician, Dr. Arboleda, in the Statement may be supported by the medical evidence in the record and may be consistent with other substantial evidence.[13] However, the ALJ's decision does not indicate whether the ALJ afforded the proper weight due to the Statement, and intentionally determined that it was not entitled to controlling weight under 20 CFR 404.1527, because of the ALJ's apparent failure to properly identify the Statement as being authored by both Ms. Klusman, a non-acceptable source, *and* Dr. Arboleda, an acceptable source and a treating physician. The Commissioner's efforts to suggest otherwise are unavailing because they require the undersigned to speculate as to the weight the ALJ assigned to the Statement.

For example, the Commissioner argues that the ALJ was aware that the Statement was signed by both Dr. Arboleda and Ms. Klusman based on a question the ALJ asked during the

---

[13] *See supra* note 10; R. at 214 (list of medications prescribed to Plaintiff by Dr. Arboleda), 234-38 (a Mental Status Evaluation Form completed by Dr. Arboleda, dated March 4, 2014), 222-32, 240-43, 268, 271-74, 277-80 (progress notes completed by Dr. Arboleda).

hearing. *See* ECF No. 12 at 14 (stating "[i]nitially, at the hearing, the ALJ expressly acknowledged that Dr. Arboleda signed the [Statement]"). However, a review of the hearing transcript reveals that although the question referenced by the Commissioner referenced a statement from March of 2015 (and the Statement was signed on March 16, 2015), the question was actually posed by Plaintiff's attorney rather than by the ALJ. *See* R. at 52 (Plaintiff's counsel asking ". . . and [Ms. Klusman] and Dr. Arboleda completed a questionnaire for you in March of 2015 regarding some of your limitations and symptoms?"). Thus, it was the attorney, not the ALJ, who acknowledged that the Statement was authored by Dr. Arboleda.

The undersigned's conclusion that the ALJ was not aware that Dr. Arboleda co-authored the Statement, and thus did not afford the Statement the proper weight required by the regulations in effect at the time, is further informed by the fact that the text of the ALJ's decision only refers to the Statement (Exhibit 3F) in connection with Ms. Klusman. *See* R. at 30. In contrast, when the ALJ's decision refers to Dr. Arboleda, it is only in connection with Exhibits 1F, 2F, 4F, and 6F, which are Dr. Arboleda's progress notes. *Compare* R. at 30 ("The undersigned attributed partial weight to the assessments provided by [Plaintiff's] therapist, Ms. Beatrice Klusman (Ex. 3F and SSR 06-3p)"), *with* R. at 31 ("Dr. Arboleda's assessments have been considered and are entitled to partial weight, because the claimant's minimal progress notes do not confirm the severity of Dr. Arboleda's assessments.") (citing 222-32, 233-43, 250-53, 266-80). Additionally, following the ALJ's written decision, the ALJ provided a list of exhibits that he considered and were included in the record. Notably, when describing "Exhibit 3F" (the Statement), the ALJ specifically described Exhibit 3F as a "Medical Source Statement – Mental" and identifies the source of Exhibit 3F as "Beatrice M. Klusman, PMHNP-BC." R. at 36. The

undersigned also notes that based on even a cursory review, Dr. Arboleda's signature and hand-printed name are clearly visible on the last page of the Statement under Ms. Klusman's printed name and signature. *See* R. at 249 (listing the signature and typed name of Beatrice Klusman, PMHNP-BC and directly underneath the signature and handwritten words "Evelyn D. Arboleda, MD Psychiatrist). Thus, even if the ALJ was not aware that it was Dr. Arboleda's writing and signature on the last page of the Statement, he had a duty to make a concerted effort to ascertain whose signature it was so as to apply the correct legal standard when assigning the proper weight to the Statement.

Other courts who have considered this issue have held that remand was required when the ALJ failed to make the effort to ascertain the name of a physician who had signed a medical source statement when the signature was illegible. *See, e.g.,  Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1300-01 (D. Kan. 2007) (reasoning that "the development of an adequate record requires the ALJ to make a reasonable effort to ascertain the identity of a medical source who prepares a medical source statement which provides opinions regarding a claimant's physical and/or mental limitations").

This failure to identify Dr. Arboleda as an author of the Statement was further compounded because it is unclear whether the ALJ assigned the appropriate weight to the Statement since the opinion of a treating physician is usually assigned controlling weight, unless it is not consistent with the evidence as a whole. *See, e.g., Lee v. Berryhill*, No. 1:17CV475, 2018 WL 2583115, at *4-5 (M.D.N.C. June 4, 2018). It is well-established in courts within the Fourth Circuit that if an ALJ decides to award "limited weight" to the opinion of a treating physician, the ALJ may do so only if he or she provides appropriate justification supported by

"substantial evidence." *King v. Berryhill*, No. CV 6:17-338-RMG-KFM, 2018 WL 1629207, at *6-8 (D.S.C. Mar. 15, 2018), *report and recommendation adopted*, No. CV 6: 17-338-RMG, 2018 WL 1629134 (D.S.C. Apr. 3, 2018). Here, the ALJ neither assigned controlling weight to Dr. Arboleda's opinion provided in the Statement, nor supported his decision not to do so with substantial evidence from the record. As a result, the undersigned is unable to say that the ALJ properly applied the correct legal standard when considering the record before him.

In summation, due to the ALJ's misidentification of Ms. Klusman as the sole author and signatory of the Statement, rather than both Ms. Klusman *and* Dr. Arboleda, the Statement was evaluated under the less deferential standard of SSR 06-3p, as opposed to the correct standard, under 20 CFR § 404.1527, and Dr. Arboleda's opinion therein was not evaluated as one from a treating physician. It is impossible to know what weight would be attributed to the Statement if it had been examined under the correct standard. Therefore, it is uncertain as to whether substantial evidence supported the ALJ's final decision. Accordingly, the undersigned **FINDS** that the ALJ's conclusions are not supported by substantial evidence, because the incorrect legal standards were applied. *See Fuller v. Astrue*, No. 8:11-CV-02854-TLW, 2012 WL 7548727, at *2 (D.S.C. Dec. 18, 2012), *report and recommendation adopted*, No. CIV.A. 8:11-02854, 2013 WL 708873 (D.S.C. Feb. 25, 2013) ("Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.") (citing *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962)). Therefore, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 9) be **GRANTED** as to Plaintiff's claims of

error.

## VI. **RECOMMENDATION**

For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 9) be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## VII. **REVIEW PROCEDURE**

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
June 20, 2018

21